DENNIS K. BURKE
United States Attorney
District of Arizona

Raymond K. Woo
Arizona State Bar No. 023050
raymond.woo@usdoj.gov

Dominic Lanza
California State Bar No. 225989
dominic.lanza@usdoj.gov
Assistant U.S. Attorneys
Two Renaissance Square
40 North Central Avenue, Suite
Phoenix, Arizona 85004
Telephone (602) 514-7500

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Erin Michelle Leastman,<br><br>Defendant. | CR-08-0255-04-PHX-GMS<br><br>**GOVERNMENT'S AMENDED MOTION FOR DOWNWARD DEPARTURE PURSUANT TO U.S.S.G. § 5K1.1, AND SENTENCING RECOMMENDATION** |

The United States of America hereby moves for an **12-level** downward departure pursuant to U.S.S.G. § 5K1.1 for the reasons set forth in the attached Memorandum. If the Court accepts the parties amended plea agreement and the government's recommendation, defendant Erin Leastman's ("LEASTMAN") total offense level will be reduced to 12 (Zone C) and her advisory guideline range will be 10 to 16 months of imprisonment. The government does not believe that a within-guidelines sentence is appropriate here based upon the considerations under Section 3553. In fact, the government recommends that the Court sentence LEASTMAN to a one day term of imprisonment for the reasons set forth in this motion.

Respectfully submitted this 31st day of March, 2010.

DENNIS K. BURKE
United States Attorney
District of Arizona

*s/Raymond K. Woo*

RAYMOND K. WOO
DOMINIC LANZA
Assistant U.S. Attorneys

# MEMORANDUM

The United States of America, by and through undersigned counsel, respectfully moves, pursuant to 18 U.S.C. § 3553(e), 28 U.S.C. § 994(n), and U.S.S.G. § 5K1.1, to authorize this Court to depart downward from the minimum sentence dictated by the Sentencing Guidelines (U.S.S.G.) for the offenses to which LEASTMAN has entered a guilty plea. In support of its motion, the government states as follows:

# ARGUMENT

## I. United States Sentencing Guidelines, Section 5K1.1 Allows Government to Request a Downward Departure

Section 5K1.1 of the Sentencing Guidelines allows the court to depart downward for LEASTMAN's sentence based on her substantial assistance to the government. The appropriate reduction shall be decided by the court after consideration of certain factors. Those factors include, but are not limited to:

(1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3) the nature and extent of the defendant's assistance;

(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance; and

(5) the timeliness of the assistance.

U.S.S.G. § 5K1.1(a).

### A. Significance and Usefulness of the Assistance.

The significance of LEASTMAN's cooperation warrants the filing of this motion. LEASTMAN served as the escrow officer for the majority of the fraudulent loans procured by Jeffrey Crandell ("CRANDELL") and Jake Whitman ("WHITMAN"). LEASTMAN's cooperation was useful to the government, because she could lay the foundation for all of the escrow files and pertinent documents. Notably, LEASTMAN confirmed that she received down payment checks from either WHITMAN and CRANDELL and not from the third-party buyer,

as was listed on the loan application. LEASTMAN also corroborated the government's evidence that CRANDELL altered bank statements that were submitted to lenders.

If CRANDELL proceeded to trial, LEASTMAN would have provided substantial assistance to the government by introducing key escrow documents into evidence. LEASTMAN's cooperation most likely played some role in CRANDELL's decision to plead guilty.

### B. Truthfulness, Completeness and Reliability of Information.

Unfortunately, LEASTMAN was not always completely truthful with the government. For example, during the first two meetings with the United States, LEASTMAN did not admit that she released bank funds to WHITMAN, prior to the close of the Chandler Heights loans, so that he could obtain down payment checks for the third-party buyers. However, LEASTMAN did ultimately provide truthful and reliable information to the United States.

### C. Nature and Extent of Defendant's Assistance.

LEASTMAN's assistance was very important to the United States because she corroborated the government's evidence that the down payments were actually made by WHITMAN or CRANDELL. More importantly, LEASTMAN was able to identify the down payment checks that were provided to her by CRANDELL and WHITMAN. Since LEASTMAN was intimately familiar with the escrow files in this case, she would have played a key role in laying the foundation for their introduction into evidence. It is also worth noting that, although WHITMAN also provided substantial assistance in this case, he was not involved with the Queen Creek properties. The government was thus greatly aided by LEASTMAN's assistance concerning how the Queen Creek transactions worked. Had this case gone to trial, LEASTMAN would have been the only testifying cooperator concerning the financial details of the Queen Creek transactions.

Based on these facts, the United States believes that LEASTMAN has offered sufficient assistance to warrant a reduction in her calculated sentence.

### D. Injury, Danger or Risk of Injury Suffered by the Defendant or His Family Because of the Assistance.

When a defendant offers information against a co-defendant, and agrees to testify against the co-defendant, the defendant may face the possibility of retaliation. LEASTMAN undertook a personal risk by providing information and agreeing to testify on behalf of the government. The government is not aware of any specific threat to LEASTMAN's safety at this time; however, LEASTMAN's willingness to undertake this risk cannot be ignored.

### E. Timeliness of Assistance.

LEASTMAN's cooperation was timely. LEASTMAN quickly agreed to speak to the United States, post-indictment, when given the opportunity. Although LEASTMAN was not entirely forthcoming during her initial interviews, the government submits that LEASTMAN's assistance was timely.

## II. Downward Departure

Based on the level of LEASTMAN's cooperation and role in the offense, the government recommends a 12-level downward departure. LEASTMAN's total offense level will be reduced to a level 12, and her advisory guideline range becomes 10 to 16 months (Zone C). Considering the usefulness of LEASTMAN's cooperation,[1] and her overall role in the offense, a minimal term of imprisonment adequately reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public, and is otherwise sufficient, but is not greater than necessary, to comply with the purposes set forth in Title 18, United States Code, Section 3553.

## III. Government's Sentencing Recommendation

As an escrow officer, LEASTMAN should have served as the stop gap to WHITMAN's and CRANDELL's fraud. Instead, LEASTMAN enabled and participated in the fraud by falsely

---

[1] LEASTMAN was not as helpful as WHITMAN, who received a 14-level departure, because she was not entirely forthcoming and could not explain the intricacies of the fraud scheme. However, LEASTMAN was more helpful than Fred Crum, who received a 9-level departure, because she could have assisted the government in introducing vital documents during a trial against CRANDELL and help shed light on the Queen Creek transactions.

certifying to the banks that she had received down payments from the buyers. LEASTMAN's violation of her position of trust weighs heavily against her, and notably, LEASTMAN's offense level is higher than her co-defendants because she handled almost every loan file.

However, LEASTMAN should not receive a greater sentence than CRANDELL, WHITMAN, or even Fred Crum ("CRUM"). The government submits that a term of imprisonment of one day, or time served, to be followed by supervised release is a reasonable sentence and comports with the factors under 18 U.S.C. 3553 for the following reasons. First, LEASTMAN did not design this fraud. Second, LEASTMAN did not profit like WHITMAN, CRANDELL or even CRUM. Indeed, her decision to participate in the scheme was, in many respects, inexplicable. She did not share in the profits (like CRANDELL and WHITMAN), or even receive a cash bonus for each fraudulent act (like CRUM). Third, LEASTMAN was not the person who provided down payments on behalf of the third-party buyers. Fourth, LEASTMAN did not conceal her identity from the bank with the use of a straw buyer (Tyson Young) or a shell company. And fifth, LEASTMAN may not have understood the extent of the fraud being perpetrated by WHITMAN and CRANDELL.

In these respects, LEASTMAN is not similarly situated to CRUM, who received a 4-month, for purposes of 18 U.S.C. § 3553(a)(6). As the Court is aware, CRUM gained thousands of dollars by recruiting straw buyers, falsifying loan documents, and altering bank statements. Significantly, CRUM also engaged in separate fraudulent loan transactions involving his parents and Leamon Crandell that were not part of the underlying scheme. As noted in the factual basis of his plea agreement, CRUM secured a second mortgage on his parents' property for $50,000 without their knowledge or permission. CRUM did this so that he could obtain additional funds for his personal use. CRUM also assisted Leamon Crandell, a relative, to purchase an unimproved lot owned by Jeffrey Hesting. CRUM falsified salary information and source of the down payment on Mr. Crandell's loan application. CRUM, like CRANDELL and WHITMAN, provided the down payment on behalf of Mr. Crandell. After the funding of Mr. Crandell's loan,

1 CRUM falsified additional documents to obtain funds for his personal use through a construction
2 loan in the name of Mr. Crandell.

3 These facts, along with LEASTMAN's cooperation and complete lack of a prior criminal
4 history, strongly support a sentence that includes a *minimal* term of imprisonment. LEASTMAN
5 is not as culpable as WHITMAN, CRANDELL, and CRUM because she did not independently
6 commit crimes for personal profit; instead, she acted at the behest of CRANDELL and
7 WHITMAN, the leaders of the conspiracy. The government is fairly certain that LEASTMAN
8 acted criminally because she was influenced by CRANDELL and WHITMAN.

9 In short, although LEASTMAN exhibited an utter disregard for her important
10 responsibilities as an escrow agent, the government believes that the presence of a felony
11 conviction on her record will preclude her occupying such positions of trust in the future. In
12 other words, the fact of conviction will protect the public from future harm. There is simply no
13 need to tack on a significant sentence of incarceration on top of her conviction.

14 For all of these reasons, the United States respectfully recommends that the Court accept
15 its motion for 12-level downward departure pursuant to U.S.S.G. § 5K1.1 and sentence
16 LEASTMAN to one day of incarceration to be followed by 5 years of supervised release.

17 Respectfully submitted this 31st day of March, 2010.

18 DENNIS K. BURKE
United States Attorney
19 District of Arizona

20 *s/Raymond K. Woo*

21 RAYMOND K. WOO
DOMINIC LANZA
22 Assistant U.S. Attorneys

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date March 31, 2010, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants: Tyrone Mitchell; Greg Clark; Brian Strong; Fred Petti; Mark Berardoni.